NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

KRISTINA J.,
*Appellant*,

v.

DEPARTMENT OF CHILD SAFETY, K.H.,
*Appellees*.

No. 1 CA-JV 20-0180
FILED 12-8-2020

Appeal from the Superior Court in Maricopa County
No. JD34757
The Honorable Jo Lynn Gentry, Judge

**VACATED AND REMANDED**

COUNSEL

Maricopa County Legal Defender's Office, Phoenix
By Jamie R. Heller
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Cathleen E. Fuller
*Counsel for Appellee*

---

## MEMORANDUM DECISION

Judge David D. Weinzweig delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge D. Steven Williams joined.

---

**W E I N Z W E I G**, Judge:

**¶1**        Kristina J. ("Mother") appeals the juvenile court's order terminating her parental rights to K.H.  She argues the Department of Child Safety ("DCS") did not prove a statutory ground for termination.  Because we cannot discern the court's basis for an essential element, we vacate and remand for clarification.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**        Mother and Father are the natural parents of K.H., born in January 2012, and A.H., born in February 2013.[1]  They divorced in Georgia in April 2014.  The Georgia family court awarded Mother and Father joint legal custody of K.H. and A.H.  Father later took K.H. from Georgia to Arizona without Mother's consent.

**¶3**        DCS first learned about K.H. in September 2017 after Father reportedly hit another child, his girlfriend's son, in the face.  DCS removed K.H. from Father and petitioned for a dependency finding on the grounds of neglect and abandonment.  Father told DCS investigators that Mother had not seen K.H. for at least two years.  DCS did not know where Mother lived in Georgia.

**¶4**        Father waited two months to inform Mother about K.H.'s removal and the dependency proceedings.  Mother contacted DCS.  In January 2018, Mother stipulated to the dependency based on K.H.'s "behaviors" and the juvenile court found K.H. "dependent based upon [K.H.'s] behaviors."  The court added that "no allegations of abuse or neglect [had been found] regarding [M]other."  Because Mother remained in Georgia, the juvenile court ordered DCS to begin the reunification

---

[1]        The juvenile court also terminated Father's parental rights, but he is not party to this appeal, which only concerns Mother's parental rights to K.H.

process between Mother and K.H. under the Interstate Compact for the Placement of Children ("ICPC").[2]

**¶5**          Mother spoke to K.H. by telephone in March 2018 and sent him pictures and video recordings.  For the next six months, Mother had no contact with K.H. and did not respond to inquiries from K.H.'s group home. DCS arranged a video call between K.H. and Mother in October 2018.  In November 2018, Georgia's Division of Child and Family Services ("DCFS") denied Mother's ICPC referral because they could not schedule a home study.

**¶6**          DCS sent a second ICPC referral to Georgia, citing Mother's "ability and desire to engage with the ICPC process," but expressed concern about Mother's unresponsive periods.  Mother finished several steps in the second ICPC, including a background check and self-reported drug test. She also had weekly telephone calls and monthly video calls with K.H., though she missed several scheduled calls.  DCS encouraged Mother to visit K.H. in Arizona.  Mother said she lacked the resources to fund the trip and sought an order requiring DCS to cover it.  The court denied Mother's request.

**¶7**          K.H.'s paternal grandmother asked the Arizona court to place K.H. with her in Georgia, sharing that she had also begun the ICPC process. Mother objected.  The court granted grandmother's request in July 2019, with Mother's second ICPC pending.  K.H. was placed with his paternal grandmother in Georgia.  With K.H. and Mother in Georgia, "DCS had struggled to provide visits to Mother while it sought out an agency that could supervise visits and provide transportation."

**¶8**          In September 2019, Georgia DCFS denied Mother's second ICPC because she had been evicted from her apartment and because Georgia allegations had surfaced that Mother hit A.H., K.H.'s sister. Mother was told she needed to wait six more months before another ICPC would be considered.

**¶9**          That same month, the juvenile court changed K.H.'s case plan to severance and adoption.  DCS moved to terminate Mother's parental

---

[2]     We note that, before the dependency, the Arizona court conferred with a Georgia court and confirmed that Arizona properly had jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act.  *See* A.R.S. § 25-1033.

rights in October 2019 on the grounds of nine-months and fifteen-months out-of-home placement.

**¶10** The juvenile court held a one-day severance trial in April 2020. The assigned DCS case worker testified that Mother had "not made any progress in having the child placed in her care." Mother telephonically testified.

**¶11** In May 2020, the juvenile court found that DCS had proven both out-of-home placement grounds by clear and convincing evidence and terminated Mother's parental rights to K.H. The court specifically found that Mother "has substantially neglected or willfully refused to remedy the circumstances that cause the child to be in an out-of-home placement. A.R.S. § 8-533(B)(8)(a)." The court added: "At the time this child came into care, it was reported by Father that Mother had not seen this child in over two years. Mother has been residing in Georgia since the beginning of the dependency. . . . While Mother has visited with the child over the phone and through video, she has not seen the child in person since well before the dependency began. To date, Mother has not made progress through ICPC to have her child approved to be placed with her." The court also found that termination was in K.H.'s best interests. Mother timely appealed. We have jurisdiction. A.R.S. §§ 8-235(A), 12-120.21, and 12-2101(A)(1).

## DISCUSSION

**¶12** Although not absolute, parents have "a fundamental liberty interest in the care, custody, and management of their children." *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24 (2005). This court will affirm a severance order unless it is clearly erroneous, and we accept the court's factual findings unless no reasonable evidence supports them. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

**¶13** Parental rights are properly terminated when the juvenile court finds, by clear and convincing evidence, a statutory ground for termination under A.R.S. § 8-533(B) and, by a preponderance of the evidence, that termination is in the child's best interests. *Valerie M. v. Ariz. Dep't of Econ. Sec.*, 219 Ariz. 331, 334, ¶ 9 (2009).

**¶14** Severance based upon nine months out-of-home placement under A.R.S. § 8-533(B)(8)(a) requires proof that (1) the child had been in court-ordered out-of-home placement for at least nine months; (2) DCS made a "diligent effort to provide appropriate reunification services"; and (3) despite these efforts, Mother has substantially neglected or willfully

refused to remedy the circumstances causing the children to be in an out-of-home placement.

¶15        Severance based upon fifteen months out-of-home placement under A.R.S. § 8-533(B)(8)(c) requires proof that (1) the child has been placed in out-of-home care for at least fifteen months; (2) DCS "has made a diligent effort to provide appropriate reunification services"; (3) "the parent has been unable to remedy the circumstances that cause the child to be in an out-of-home placement"; and (4) "there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future."

¶16        Mother argues the juvenile court failed to identify "the circumstances" she failed to remedy at the time of the severance and that DCS did not make "diligent effort to provide appropriate reunification services," which necessarily turns on the unremedied circumstances. A.R.S. § 8-533(B)(8)(a), (c); *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 96, ¶ 31, n.14 (App. 2009) (explaining that relevant circumstances are those "existing at the time of the severance that prevent a parent from being able to appropriately provide for his or her children").  Both out-of-home grounds require these common elements.

¶17        DCS claims the unremedied "circumstances" are Mother's failure "to timely engage in the necessary steps to establish a relationship with [K.H.] and have [K.H.] placed in her care," even if not stated in the severance order, and that Mother waived any challenge to the adequacy of reunification services.

¶18        Before addressing the merits, we hold that Mother did not waive her challenge to the diligent efforts finding.  *See Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 178, ¶ 14 (App. 2014) (listing times when a parent may preserve a challenge to DCS's reasonable efforts).  During court hearings in December 2019 and February 2020, Mother objected to the adequacy of DCS services.  She also raised the issue at the severance trial, arguing that DCS "provided little to no services for [Mother]."

¶19        On the merits, the juvenile court did not identify the "circumstances" that Mother failed to remedy.  Without that information, this court cannot assess whether DCS offered appropriate reunification circumstances. *Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 17, ¶ 26 (App. 2019) ("Because the court did not identify the 'circumstance' causing the out-of-home placement, *both in origin and any cause arising during the dependency*, the court was unable to properly conclude that: DCS had made

a diligent effort to provide appropriate reunification services [and that] Father was unable to remedy the circumstance." (emphasis in original)).

¶20 Aside from recognizing the denied ICPCs, the court only found that Mother had not seen the child for a long time before dependency and had "not shown the behavioral changes needed to appropriately parent her child." The court also found, incorrectly, that Mother had not "seen the child in person since well before dependency began." Mother had visited with K.H. in Georgia after K.H. was placed with his maternal grandmother. Beyond that, "[a] denied ICPC alone does not preclude a parent from gaining custody of the child." *Id.* at 21, ¶ 42. The juvenile court must still "determine if the parent is unfit based on the evidence." *Id.* And again, the court found K.H. dependent as to Mother because of K.H.'s behaviors and DCS made no abandonment allegation.

¶21 We do not reach or decide whether the record has sufficient evidence to prove that Mother has not remedied the circumstances or to prove that DCS provided adequate reunification services. Rather, we are unable to address those issues unless we know what circumstances the juvenile court relied on. *E.R. v. Dep't of Child Safety*, 237 Ariz. 56, 60, ¶ 18 (App. 2015) (vacating and remanding termination decision where this court could not discern whether the juvenile court properly identified the circumstance a parent needed to address).

## CONCLUSION

¶22 We vacate the juvenile court's termination order and remand for the court for clarification. The juvenile court may rule based on the existing record or hold additional hearings as the court finds appropriate. We do not reach Mother's remaining arguments.



AMY M. WOOD • Clerk of the Court
FILED:   AA